Good morning. Yes, I'm Robert Besser, appearing for Appellant Mr. Nafal. I actually believe that the issues have been adequately briefed, and they are very clear, and I believe there are two issues that this Court needs to consider. One is whether or not the 1976 Copyright Act applies the instrument at issue, and the second is whether, if it does, the instrument is sufficient to give grant to Mr. Nafal sufficient rights to bring the claim. Now, I just, I really have one very short point to make on the issue of whether or not the 1976 Act applies. In my view, the 1976 Act created the right for the claimant to transfer portions of a copyright. That is, you could have an exclusive interest in any of the rights that exist under a copyright. And just as a logical proposition, I would urge, that it should make no difference if I, in 1985, for example, secure an exclusive license in a song that was created under a copyright. In 1982, then clearly I have rights to enforce that exclusive license, if the rights granted to me are violated. And at the same time, in 1985, if I acquire a license in a song that was created in 1955 and is still subject to the copyright, I mean, assuming the renewal rights have been secured, it makes no logical sense that my exclusive license would be subject to the copyright. The exclusive license is a lesser license under the provisions of the 1976 Copyright Act. I believe that the clear intent of the 1976 Copyright Act is to grant certain rights to certain people. And those certain people include exclusive licensees. Let me assume for the sake of discussion that you're right about which Act applies. Yes. The next question is, is your client really an exclusive co-licensee or is he a glorified assignee of a cause of action? I take the position that on the face of the document, he was granted an equal share in an exclusive license, that yes, he was. That the grant specifically says to him, you are hereby granted an undivided 50% interest in an exclusive license. Well, that's the first half. The second half then takes away a lot of what you expect. I acknowledge that. I mean, I'm not here denying the obvious language of the grant. But I think that it's within the rights of two co-exclusive licensees to decide how they will handle, if you will, the administration of the exclusive license. It's not an unusual case, for example, in music publishing deals where there are co-publishing deals between a writer and an administrator, where the administrator takes on a lot of the burdens. Nonetheless, both the writer and the publishing company, be it EMI or one of the major companies, will own 50% of the rights. And the writer will retain, or sometimes it's more common, it's a 25% split. But nonetheless, there can be literally 20 pages of boilerplate language deciding how those exclusive rights are to be handled. I think that's the case here. They agreed among themselves. Nonetheless, they also agreed that they're each co-exclusive licensees of a license that the trial court found, at least initially, was, in fact, an exclusive license. That's the original license from Mr. Osama to, or the heirs, to Mr. Singer. And I submit on that basis there. Unless there are questions from the Court. Thank you. Thank you very much, Mr. President. May it please the Court. I'm Russell Frackman. I represent most of the defendants, appellees, cross-appellants. I think Judge Silverman hit the nail on the head in terms of what I was about to argue. The fact that the agreement refers in maybe one place to an exclusive license certainly, as Judge Wilson found, is not this positive. Or else anyone could refer in an agreement to an exclusive license and confer standing. What the judge did, what the district judge did, is he saw through the artifice that Mr. Nafal and others attempted to create. And he looked at the terms of the agreement and he looked at the terms of the preceding three agreements. And looking at them, it became, and I submit to the Court, it is crystal clear that Mr. Nafal had essentially no rights in the copyright, let alone any exclusive rights. He was, as Judge Wilson stated, at best, at best a glorified non-exclusive licensee to whom Mr. Cima from time to time might choose to assign a cause of action. Under the agreements, and particularly the final assignment agreement, Mr. Nafal owned no part of the copyright. He had no part and no exclusive license to any of the Section 106 rights. He had no right to do anything with the copyright or any of the Section 106 rights. The only thing he was to do under this agreement and the preceding agreements was to file this lawsuit. He was, in essence, a financier. He was a stranger to the copyright. He was a stranger to the owners of the copyright. He agreed to finance the lawsuit in return for a piece of the action. And he couldn't even file a lawsuit without Mr. Cima's consent. So he could, in essence, do nothing. He couldn't license others. He couldn't exercise any right. He couldn't sue. And whatever rights he had, which were really rights to a piece of the action, could be terminated if he didn't file the lawsuit. Everything in these agreements pointed back to filing this lawsuit. Let me ask you, assuming the new Copyright Act applies, who has standing to sue your client? I'm sorry, Your Honor? Assuming the 76 Act applies, who would have standing to sue your client? Well, there's actually a practical answer to that. As the Court may have noted, we have been sued. Shortly after Judge Wilson dismissed his case, one of the copyright holders, Mr. Fahmy, filed a lawsuit that is now pending in the District Court on the very same claim, very same copyright. He is a minority owner of the copyright in COSERA, COSERA. He is, as you may remember, the person who started this chain of agreements by entering into an agreement with Mr. Cima. He has filed a lawsuit. While we have defenses to the lawsuit, he does have standing. And that certainly is one of the practical problems that we would have in this case if Mr. Nafal was right. We would have two lawsuits pending on the very same copyright making the very same claims. And so there certainly were people who could bring the lawsuit, and one of whom has brought the lawsuit. Let me just think out loud here. If the plaintiff here is, in fact, an exclusive licensee, then the other guy wouldn't have standing to sue you. I'm sorry, Your Honor? I said, if the plaintiff here is, in fact, an exclusive licensee, then, was it Osama? Is that how he says his name? Mr. Osama, Mr. Fahmy. Yeah, whatever he is. Yes. Then he wouldn't be able to sue you. It depends what the exclusive right is that Mr. Nafal has. And I'm hard-pressed to find any exclusive right, certainly under the 1976... Only one party can sue you, I guess is what I'm getting at. If Nafal can sue you, then the other guy can't sue you. That is likely correct. But we will have two lawsuits, and we will have a fight over that. But more importantly, I think, Your Honor, what we have here, if this court in some fashion were to characterize what Mr. Nafal has as an exclusive right that justifies a lawsuit... And remember, if he had an exclusive right, he could only sue for violation of that exclusive right. And so you'd have to look through the agreement and see what that exclusive right is. And I think, as Judge Wilson found, there isn't any. But leaving that aside, and leaving aside the fact that we already have a lawsuit pending, what you have here, I would submit to the court, is the possibility of an evisceration of this court's decision in Silvers, where the court on Bonk held that a copyright owner could not appoint a third party to file a lawsuit on his or her behalf. What you would then have in a situation like this, copyright owner who did not want to submit to the jurisdiction of the federal court, and here I submit because the copyright owners were in Egypt. They did not want to submit to the jurisdiction of the court, at least initially. Copyright holder could appoint somebody by saying, I grant you all these exclusive rights, but I'm taking them all back. You cannot exercise them, but you can file a lawsuit, at least with my permission. Not only that, copyright holder could appoint 5, 10, or 100 people to do that. Because remember, Mr. Nafal characterizes himself as a co-exclusive licensee. What you end up with, I would submit to the court, is an end around Silvers. It is a simple way for anyone to designate a third party, a stranger, to litigate as a proxy in a copyright case. And that is exactly what the court said in Silvers is not permissible. The court in Silvers also said that standing should be circumscribed in the copyright area. And this does, Mr. Nafal's claim at least, does anything but circumscribe standing. It expands it beyond count, I would submit to the court. Because your honors will remember, Mr. Nafal not only was a stranger to the copyright, he wasn't in the music business. He didn't do anything with the copyright for the five years that he ostensibly owned a quote, license, other than file this lawsuit. It was an agreement that related to one song only. It was for free. And it essentially obligated him to file a lawsuit and to do nothing more. He was not obligated to exploit the copyright. He was not obligated to do anything. He had to file a lawsuit or else he would be terminated. The contract would be terminated. Silvers, I think, has instructed that an exclusive licensee must be an exclusive licensee of one of the Section 106 copyright rights. And Silvers also says, I believe, that the right to file a lawsuit is not an exclusive right under copyright. Indeed, that's why you can't assign it or license it. And that's all we have here I would submit to the court. And when you look, and it's not surprising that Judge Wilson reached that conclusion, because when you look at the entire history and the four agreements that were the basis for his decision and that were uncontested, you look at the four agreements and it is almost an inescapable conclusion that this was a design from the very beginning to appoint, designate a plaintiff, somebody who would finance the lawsuit and would get a piece of the action for financing the lawsuit. And that's it. And if you trace it through the four agreements from Osama to Seema, the first two, Osama to Seema, and then Seema to Nafal, and then five years later, Seema to Nafal again, that is the consistent thread through all of these. Filing the lawsuit, financing the lawsuit, getting a piece of the action, and ultimately even assuming, as the district court did without deciding that Mr. Seema may have had an exclusive right, ultimately anything that Mr. Nafal did had to be with the consent of Mr. Seema. And I think, just to conclude on this point, I think what they're trying to do, and at the risk of repeating myself, is completely empathetical to what this court determined in Silvers, and I think would just confuse and multiply litigation in this area where it's not necessary, because as I pointed out to the court, there is a plaintiff who could sue. There's a plaintiff who could have sued in 2001 but chose not to. Now, as your honors know, if the decision is that there was no exclusive license, then Mr. Nafal loses both under the 1909 Act and the 1976 Act, and there's no need for the court to make a decision as to which Act applies. We do believe that Judge Wilson was right in applying the 1909 Act in referring to four cases in this court, the only four we know of, I believe, that have applied the 1909 Act to works that were created under the 1909 Act. As you know, and as we've cited, Professor Nimmer thinks that that's what the cases in this court stand for. He disagrees with them, but he definitely says that's the rule in this court, and I would submit that it makes logical sense. It is a bright-line test. Anyone can determine when something was created and therefore determine what the rights are, and I see that I'm down to two minutes and 45 seconds, so I'll stop. Thank you, Mr. Berger. Thanks very much. May it please the Court. Good morning. My name is Michael Elkin, and I represent EMI Music Publishing and EMI Blackwood Music. I adopt the arguments set forth by Mr. Frackman. I won't repeat them. They're just two points that I'd like to address to the panel that surfaced in connection with today's argument. The first is, Judge Silverman, you raised the issue with respect to the claims that were asserted in the other action or the claims that could have been asserted by the other exclusive licensee or some other party in interest. And, in fact, the very same claims that are currently being litigated by another plaintiff were the ones that were ostensibly asserted in this very case. The irony would be that if this Court were to reverse Judge Wilson's decision, you would have effectively two lawsuits adjudicating the very same claims. I would submit in the circumstances that we have a relative stranger to the suit that has an agreement with another co-alleged licensee, the proper remedy would be for the appellant here to pursue some contractual claim against the party who allegedly granted him this ostensible copyright interest. With respect to that particular point, the issue with respect to the so-called assignment agreement, the last agreement which ostensibly gave the plaintiff appellant the right to bring this lawsuit, I would submit the following, as Judge Wilson had pointed out. You can't merely look to the label itself in order to determine the actual rights. It would be if I could just draw an analogy. If I had an employment agreement, I was an employer and I employed Mr. Frackman and I, at the rate of $75,000 a year, for three years, and we termed it a three-year employment agreement, and there's a provision somewhere in the employment agreement that says, notwithstanding the foregoing, I have the right as the employer to terminate Mr. Frackman with or without cause at any point with no compensation to be due him, I would submit that one could easily argue that, in fact, it's not a term contract, that it's an employment at will. I think Judge Wilson was correct for him to parse through the agreement and make a determination as to whether rights were really granted or they weren't really granted. At one last point, Mr. Besser, when he addressed the court, referred to licensees sometimes will have arrangements between themselves, and he referred to something he referred to in the music publishing industry as an administrator. An administrator in the music publishing industry is not a licensee. They're an agent. It's a completely different animal under the copyright law, and it has different legal implications. And with that, if there are no further questions, I would rest and thank the Court. Mr. Velkin, thank you. I know I failed to reserve. You still have time coming to me. Thank you. I would just like to very briefly point out that a lot of this argument about another case pending is in a sense, I believe, a strawman argument, because the license for Mr. Fahmy, the other plaintiff they're complaining about, or Mr. Osama, he's called both, was a grant to Mr. Seema of all of his rights in the copyrights. So the license that Mr. Seema held and granted an undivided one-half interest to Mr. Nafal was the license of all rights in the copyrights other than the territory of Egypt. They excluded the territory of Egypt. So there is no basis upon which Mr. Fahmy would have any standing if the license from Mr. Fahmy to Mr. Seema is valid, and Judge Wilson indicated that in all likelihood it is. So that license existing out there, the only person that could sue on this copyright is some combination, perhaps, of Mr. Seema and Mr. Nafal. We maintain Mr. Nafal has an undivided interest in that license, and therefore the right to pursue his claim. Am I right? This would be if Nafal has standing, then Osama does not have standing. Exactly. Well, let's suppose we rule for you today. Yes. Goes back to district court. Yes. There's another case pending. What happens to Osama's case? I would assume defendants would move to dismiss it on the grounds that- That doesn't seem too fair to Osama, who wasn't able to participate in this. Well, Osama granted his rights knowingly to Mr. Seema. I know he's not part of this appeal is what I'm saying. But the problem I have with this, Your Honor, and I've been at this for 35 years, and I honestly don't know how to handle the problem I have right at this moment. But things have changed since the record in this case was set. In other words, the relationships between the parties have changed significantly since Judge Wilson's ruling within the last year or two. And I don't want to bring those- I don't think it's appropriate for me to bring facts before the court that weren't in the record, so I've had my hands tied. But the issue you raised, all I can do is represent, is not the issue any longer, given the current relationship of the parties. I'd be glad to go any further, but I don't believe it's appropriate. No, that's all I have. Thank you. Okay. He's just argued and submitted. Good. Thank you. Very interesting case. Thank you. Good morning.
judges: Camp, Farris, Silverman